

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-4-2005

# Bruci v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-2126

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Bruci v. Atty Gen USA" (2005). *2005 Decisions.* Paper 1478.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1478

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 03-2126
_____

REYHEP BRUCI

Petitioner,

v.

ATTORNEY GENERAL OF THE UNITED STATES[1],

Respondent

_____

On Petition for Review of an Order
of the Board of Immigration Appeals
(BIA No. A78-415-983)

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
February 10, 2005

Before: BARRY, FUENTES, and VAN ANTWERPEN Circuit Judges.

(Opinion Filed: March 4, 2005)

_____

OPINION

_____

FUENTES, Circuit Judge:

_____

[1]Caption amended pursuant to Fed. R. App. P. 43(c).

Petitioner Reyhep Bruci ("Bruci") seeks review of the Board of Immigration Appeals' ("BIA") decision affirming the Immigration Judge's ("IJ") denial of his application for asylum, withholding of removal, and protection under Article 3 of the Convention Against Torture ("CAT").[2] In so ruling, the BIA affirmed without opinion the findings of the IJ that Bruci lacked credibility based on inconsistent statements made in his testimony and in his written asylum application and his failure to corroborate many of the events he described in support of his application. For the reasons that follow, we will deny Bruci's petition for review.[3]

## I. Facts

Bruci was born on October 7, 1971, and is a native and citizen of Albania. He claims that he and his family are members of the Albanian Democratic Party and that he was an opponent of the Albanian Communist regime prior to 1989. Two of Bruci's brothers, in particular, were members of the Democratic Party before Bruci was an active member and have always been more active in the Party than Bruci.

Bruci contends that because of his pre-1989 opposition status, he was treated as an

---

[2]"A grant of asylum allows an otherwise-removable alien to stay in the United States." Abdulai v. Ashcroft, 239 F.3d 542, 545 (3d Cir. 2001). On the other hand, withholding of removal merely confers the right not to be deported to a particular country, as opposed to the right to stay in this country. Id.

[3]Where, as here, the final order of the BIA summarily affirms or defers to the decision of the IJ, this Court "must review the IJ's decision." Abdulai v. Ashcroft, 239 F.3d 542, 549 n. 2 (3d Cir. 2001).

enemy of the State. In 1991-92, Bruci was completing his compulsory military service. During this time he protested against the ruling party, and in support of the Democratic Party. He claims that he was detained by the military on one occasion and was warned that if he continued supporting the Democratic Party, he could end up in jail.

In March of 1992, the Democratic Party won Albanian elections. During the rule of the Democratic Party, Bruci's family opened a bakery and started a construction company. However, in the Spring of 1997, the Socialist Party (former Communists) regained political control. The majority of Bruci's allegations in support of his various claims arose during the ensuing period. Bruci speculates that, at this juncture, the ruling party exacted retribution by burning his bakery to the ground and by generally thwarting his family's business interests. He bases this allegation on the fact that when he reported that his bakery had been destroyed, the police did not take what he believed to be appropriate actions. In addition, Bruci claims that at some point between May and June of 1999, while he and one of his brothers were performing certain construction work, police officers requested that they produce permits that were required to engage in such work. Upon providing the documents, Bruci claims one police officer erroneously characterized the documents as falsifications. Bruci's brother argued with the policeman and both Bruci and his brother were hit and/or threatened. Additionally, in May of 2000, Bruci alleges, the police detained him along with other Democratic Party activists in order to prevent them from attending a political rally.

Next, in July of 2000, Bruci contends that shortly after he registered voters on behalf of the Democratic Party, the police came to his house and took him in for questioning. Bruci alleges that when he overhead one officer suggest that he should be handcuffed, he ran away while the police shot gunfire in his direction. At this point, Bruci claims that he resolved to flee Albania and seek protection in this country.

In August of 2000, Bruci attempted to enter the United States with a fraudulent Greek passport. When he arrived in this country, he told the airport inspectors that he was coming to the United States to pursue better employment opportunities. Bruci did not indicate that any of his family remaining in Albania, including his brothers, were being persecuted for their political beliefs. We now turn to the IJ's decision that Bruci was not entitled to asylum, withholding of removal or protection under the CAT.

## II. Discussion

We review the IJ's decision under the substantial evidence standard. See Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002). Thus, the agency's finding of fact will be upheld so long as the evidence does not compel a contrary conclusion. Abdille v. Ashcroft, 242 F.3d 477, 483 (3d Cir. 2001). An adverse credibility finding must be upheld unless a "reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); see Gao, 299 F.3d at 272.

Bruci presents no evidence, nor even specifically claims, that he was tortured or that it is more likely than not that he will be tortured if returned to Albania. Therefore,

4

his claim under the CAT must fail.

With respect to his petition for asylum and withholding of removal, Bruci argues that the IJ's decision was not supported by substantial evidence because: (1) the IJ's credibility determinations were unfounded; and, (2) the record before the IJ otherwise supported Bruci's applications for asylum and withholding of removal. In his decision, the IJ took into account the fact that Bruci presented almost no corroborating evidence to support his claims. Abdulai v. Ashcroft, 239 F.3d 542, 554 (3d Cir. 2001)(noting that "the BIA may sometimes require [applicants] to supply corroborating evidence in order to meet their burden of proof"). The IJ specifically considered the lack of documentation to show ownership or existence of the bakery, the construction company, the fact of his arrests, and medical treatment for his injuries. He also noted that Bruci did not present affidavits from his family, even though Bruci has been in regular contact with his family since he arrived in the United States. See id. (stating that it is reasonable to expect an applicant to produce communications from family members remaining in the applicant's home country). In fact, there is a total lack of documentation in the record to support Bruci's claims, except for a few general news reports.

Another fact relied on by the IJ is that, even though Bruci's family members are also alleged to be members of the Albanian Democratic Party, as of the time of the hearing they apparently still lived in Albania and were not being persecuted for their political opinions. This supports the IJ's contention that Bruci could reside in Albania

5

safely.

Other aspects of Bruci's testimony were also found to be incredible. First, the IJ doubted Bruci's testimony regarding his encounter with the Albanian police when he claims to have escaped. The IJ explained that he "found it hard to believe that four police officers, including two who are apparently detectives or wore plainclothes, would accompany a prisoner by walking three to five yards behind him rather than have two walk in front, or on the side, or even hold his arms," thus enabling Bruci to escape. Also noted was Bruci's testimony that just before this incident, he made a business trip to Greece.

In fact, whether Bruci ever returned to Albania from Greece, and whether he was in fact in Albania in late July/August of 2000 when the "final" incident with the police allegedly occurred, were both areas where the IJ felt Bruci was not credible. The IJ was skeptical of Bruci's account because six weeks after Bruci traveled to Greece, he arrived in New York on a flight from Barcelona, Spain, bearing a false Greek passport. While it is conceivable that Bruci traveled to Greece, returned to Albania, purchased his false documents in Albania and then traveled to Spain from there, the record is more consistent with the theory that Bruci traveled to Greece, purchased a false Greek passport there and then crossed the open internal borders of the European Union to Spain. While the IJ did not find as a matter of fact that Bruci's trip to the United States was planned or executed in this manner, the plausibility of this reading of the record helps to assure us that a

reasonable factfinder would reject Bruci's own account of the events.

The IJ also noted inconsistencies between Bruci's answers to questions posed by an airport interviewer and his testimony during the hearing. On August 13, 2000, upon his arrival to the United States, Bruci stated to an immigration official at the airport that neither he nor anyone in his family had ever been arrested or threatened with persecution or imprisonment. Instead, he stated that he was coming to this country to work because he was looked down upon and pressured due to the electoral victory of the Socialist party in Albania, which thereby diminished his economic prospects there. These ambiguous declarations contradicted Bruci's testimony during the hearing that he came to this country for fear of his life, as well as the testimony that Bruci was detained on several occasions, was threatened with imprisonment because of his support of the Democratic Party, and was arrested and hit with sticks in September of 1998 and in May of 2000.

While we have held that airport interviews may sometimes be inaccurate, and therefore should not be unduly relied upon, Balasubramanrim v. I.N.S., 143 F.3d 157,162 (3d Cir. 1998), the IJ's adverse credibility findings in this case were also based on the other weaknesses and inconsistencies in Bruci's testimony. These findings were further supported by the stark absence of corroborating evidence and/or affidavits from Bruci's family members, and the fact that Bruci's more

7

politically active brothers remain in Albania apparently without event.

## III. Conclusion

For all of the foregoing reasons, the IJ's decision was based upon substantial evidence. Therefore, we will deny the petition for review.